May it please the Court, my name is Caitlin DeWitt, and I represent the petitioner in this matter, Mr. Jose Daniel Gomez-Menendez. I desire to reserve two minutes for rebuttal. The case is before this Court today to tackle two issues, the first being the lack of cumulative effect review of the harm the petitioner suffered, and the other is may an administrative delay prejudice an objectively reasonable fear of persecution. Mr. Gomez-Menendez was repeatedly threatened and then shot at causing him to flee his politically motivated persecutor. The immigration judge and then the board adopting her decision found that because the petitioner did not suffer any physical harm, he did not suffer past persecution. Likewise, the board viewed the three escalating threats the petitioner suffered in isolation rather than cumulatively along with the confrontation of lethal force as has long been the practice prescribed in this Court. Cumulative effect review must be done when assessing a claim of past persecution, as was so recently decided in Sosa v. Garland. However, the immigration judge and the board both failed to conduct that review. Instead, each threat was suffered that was suffered by the petitioner was viewed in a vacuum and not in combination with the shooting incident that petitioner suffered. These instances of harm were viewed as completely separate events because the board claims that the petitioner had not By doing this, the agency was able to downplay what actually happened to the petitioner which was attempted murder. Counselor, if you'd help me here because as I read the IJ's discussion, I don't have the page reference in front of me, but the IJ said, well the threats aren't enough and almost immediately said that the shooting wasn't enough and it sounded like had the IJ simply said, and together they're not enough, everything would be fine. So are we kind of grading the papers harshly in the sense that the IJ was not thinking about them pages apart? Just put it all together, set it, and left out the word and. Can you help me as to would that in fact have been enough or what did the IJ need to do to make it a true cumulative analysis? No, your honor. So I think the issue here is that the shooting incident was purposely left out of the cumulative effect review because it was a distance from those threats according to the IJ. It's the same thing with the exhaustion doctrine. We don't need a specific, you know, cumulatively, these do not work, but the issue is it was kind of a disposed conclusive argument that the threats were not enough and then the shooting was not enough when really if we look at the shooting, I'm sorry, the threats piece by piece each grows in menace exponentially. So I think that's the issue we have here. Let me, Ms. DeWitt, let me follow up with the question on that and I'm going to ask just for an example and I don't mean to analogize it to this case because the allegations that he makes are very serious and I don't mean to discount that, but you could see a case where there are multiple instances where none of them are serious. Maybe he says they made a joke about me or they ate my lunch out of the refrigerator and let's say those are the two things he put forth. Let's say the IJ analyzed the joke and eating the lunch separately and never said cumulatively. In that instance, will we have to send that case back as well or is there at least some sort of threshold we have to hit before we need to analyze whether these things were done cumulatively or not? I think like most everything else in immigration law, it has to be viewed on a case-by-case basis. But additionally, we don't see that here. We don't see the individual threats being considered at all. We see the threats weren't serious and the shooting wasn't linked, which is erroneous in and of itself. So while your example is a perfect example of probably doesn't need to be sent back down, the issue is that it wasn't done at all and these are very serious threats. Right. I guess what I'm trying to elicit here is following up on Judge Boggs, is there a certain threshold where if the judge doesn't use the word cumulatively, we have to send it back? Like what is the line here? And I appreciate in this case, you're going to say, look, the guy was shot at. Okay. I appreciate that. But if we're going to try to come up with a rule from SOSA, what is the rule we're looking at? I think the rule is the... I don't think we need to develop a new rule from SOSA. I think we just need to reaffirm the one we have. Okay. With respect to the shooting, if I could take you there for a minute, because he does seem to say different things at different times. But at the very end, when the judge goes back to him again, it does seem to be consistent with his theory that this is the only guy that I've had a beef with. So he must have been the one that shot me. I mean, at some points he says, I can't see him. At some points he sort of says, but isn't it certainly you're not compelled to believe that this was the same man who shot him, who had been making these earlier threats, who themselves, you're right, a death threat is bad, but they're separated by many, many months in a way that does seem like the IJ could legitimately say, this is a personal beef. This is not a high level persecution by a political actor. I mean, how do you read the parts about who shot him? Well, on the contrary, your honor, he testified that in December 2010, this FMLN supporter came up to him for the, at least the third time and threatened him that he was going to kill him or he was going to have gang members. He was going to hire gang members. And then a couple of months, this shooting occurred. And as you said, he's the only person that he'd had any issue with. And as well, testimony shows that he was alone on that street where he was shot at. So there will be really have a good comparison to Madigal Beholder, that although he doesn't know the exact face of the person who shot him, there is plenty of circumstantial evidence to compel that he was shot at by his persecutor. Correct. This was sort of off. I mean, it was on a separate street, but it was off of this Central Festival Plaza area. Correct. I believe I believe the word he was searching for was maybe an alley. That's how I visualize it. But he did testify that he was alone and that these people shot at him, not simply towards his direction, as the I.J. characterized. Let me follow up with that. As my colleague had just mentioned, there was some ambiguity in your client's description of who did it or why. Let's just say that there was no positive identification of his persecutor, if you will, based on the protected social group. And he was simply I shouldn't say simply he was shot at. Would that be enough in this case to warrant remand? Or do we have to, if you will, credit his testimony that it was his the same guy who gave me trouble at the polls and thereafter that shot at him? Well, I believe since credibility wasn't an issue in this, we can take him at his word that he truly believed based on the circumstantial evidence that the person who shot him was related to those threats. And while that might not have been the exact same person that shot at him, he did claim that he was going to hire people to do so. I.J. didn't believe him, right? Or didn't credit that? Did the I.J. credit his testimony? The I.J. did find him credible and did not. On that on that point, did he find him credible that it was the same person? The I.J. characterized it as it was dark and so he wasn't sure. But again, that's dismissing the wealth of circumstantial evidence we have that he was the only person that petitioner had a problem with. He was alone on that street. So he was clearly the target of the shooting. And he was threatened just two, three weeks earlier. OK, you've only just a little over a minute left. You want to say the balance of your time? I would. Thank you very much. Very well. Let's hear from the government. May it please the court. Jacqueline Hagner on behalf of the attorney general. The court should reject petitioner challenges to the agency's denial of asylum for two reasons. First, substantial evidence supports the agency's finding of no past persecution. And second, substantial evidence supports the agency's that petitioner did not establish an objectively reasonable fear of future persecution. I'd like to first turn to the issue of past persecution and speak a little bit about some of the questions that have been asked regarding the cumulative effect of the threats and the shooting incident. I would like to first begin by saying that the agency certainly did consider the cumulative effect of the three threats and the shooting incident. And we know that because the immigration judge went through each threat and specifically discussed the facts and circumstances of each threat and did exactly the same for the shooting incident. Essentially, the threats were very vague. They were all very similar. And I have not forgotten what happened during this ballot counting incident. And I will get you at some point. Let me ask you this. If if if we credit that it was the same person who had threatened the petitioner previously, I guess three other times, if that if we credit that he was part of this group that shot at the petitioner, isn't that enough to establish past persecution under our precedence? I think that's a that would be a question for the agency, Your Honor, because I don't believe that the agency found that it was. No, I understand. Please understand me. What I'm asking is if if arguendo, we say that there's there's credible evidence that the same person that threatened the petitioner three different times and specifically saying you're going to kill him or have him killed, that if you we credit that he was part of this group that shot at him, attempted murder is a very serious crime in and of itself. Isn't that sufficient under the case law to show past persecution? I think you definitely get closer, Your Honor. I'm sorry. What are you saying? You could. Sir, Your Honor, I agree that you certainly get closer to the severe level of harm required for persecution. As I think what's important in your question there, sir, is that what we are looking at is that you have linked that shooting incident definitively to the threats. And in that situation, as you said, an attempted murder is is serious harm. And I do think that this court's case precedent he doesn't he doesn't have to actually be successfully hit with a bullet, right? No, Your Honor, that is absolutely not required. And that is not response position. I would actually like to be very clear. What response position is, is that there has to be some compelling evidence that the individual who shot at him was was the individual who threatened him? Okay, so what we got now is we got the petitioner saying three different times prior to the shooting that this particular person had threatened him. The last one that he threatened he was going to have him killed or he would kill him. There's then a shooting. He states that he believes that the same person that threatened him was part of the shooting group. Isn't that enough to show substantial evidence, if you will, on the part of the petitioner? And if you will, the opposite is that there was not substantial evidence on the part of the agency. I know, Your Honor. Respondent disagrees with that. The evidence connecting the shooting, as Petitioner's counsel just stated, was essentially the close proximity to the January excuse me, the December 2010 threat. In addition to that, it was Petitioner's belief that there's nobody else that would like to harm him. That is all that is before the court in terms of linking that shooting incident. More importantly, the evidence... Speculative from the respondent's perspective, right? Speculative and certainly does not compel the conclusion that the shooting incident is linked to the threats. And that is our standard of review here. Am I right, counsel, that there could be substantial evidence on both sides, but still not be enough to compel a finding for the petitioner? You know, usually in credibility, you know, say, well, if there's substantial evidence on both sides, you know, either one might be right. But in the immigration context, as I understand it, you could easily have substantial evidence on both sides, and yet the petitioner would not be able to to that view. Correct, your honor. I think this court has said in the past, although a reasonable adjudicator could have found past persecution, that does not mean that the record compels the conclusion. And that is a very fine distinction. And that is where we are today. That is a very accurate summary of the facts before this court, that it was dark that evening. He concedes that he did not see the individuals. They were 18 meters away. I think also interesting that there was nothing said during the shooting incident. So, for instance, the shooters did not say, you know, this is what you get for that ballot counting incident. They did not identify themselves in any way. For instance, they didn't say, you know, we're the Mara's gang, as the individual had threatened to get the Mara's gang to go after petitioner. There was simply none of that type of evidence to link the shooting incident. And that's where the agency landed here. That's what they looked at. Those were the facts before the substantial evidence supports their conclusion that the shooting incident is not linked to the threats, or the evidence does not compel that conclusion. I would like to move on to, actually, I believe it was Judge Boggs had asked the question in regards to what more could the immigration judge have done to indicate that he did a cumulative analysis. If it helps, I think it is helpful to look at the immigration judge's decision that he cited to this court's decision in HOCSA. And HOCSA is a cumulative analysis case. In fact, I believe that the facts of HOCSA are very similar to the facts of this case, where we have several threats and then a physical interaction, or I think it was even, it might have been actually a shooting incident as well. And in that case, this court considered the cumulative analysis and that it did not rise to the severe level required for past persecution. And so the response position is that the immigration judge, in citing that case, certainly broadcasted to the board and to this court that it understood the requirement to conduct a cumulative analysis and said, hey, look. So from the government's perspective, Salgado, Sosa, and from your perspective earlier, presidents were satisfied here, right? Absolutely, Your Honor. I wrote Salgado, Sosa, so I have a little affinity for it. What can I say? I understand, Your Honor. The response position is that the agency, both the board and the immigration judge, sufficiently cited to law and settled to a valid case precedent from this court that was very relevant and highly persuasive. And for that reason, we can be confident that they followed the case precedent. Your strongest position is that the evidence that the petitioner cites here does not compel a change. Is that right? Yes, Your Honor. That's precisely the response position. Your Honor, I'll turn to our second point, which is the objectively reasonable fear of future persecution. I believe that petitioner's argument here can be summed up in three points, or the petitioner's fear of future persecution is not objectively reasonable for three reasons. Since 2011, petitioner has not experienced any further incident. And that is an appropriate and relevant factor for the agency to consider. In fact, this court considered that in its decision in Sharma, which is a case cited not only by the agency, but by petitioner and respondent. They consider this sort of post-threat harmless period. Now, that does not distinguish or but it is certainly a relevant factor. And that's why it was appropriate for the agency to consider that. Moreover, the agency considered that we do not know the identity of the persecutor and we don't know his whereabouts. Those were the three factors that the agency looked at. And substantial evidence supports the agency's finding here that petitioner did not establish an objectively reasonable fear of future persecution. Your Honors, I will conclude by saying that petitioner here experienced three vague threats and a shooting incident that was just too tenuous to connect it to the threats. And petitioner's fear of future persecution is not objectively reasonable when you consider the lack of any threats since 2011 that we do not know the persecutor's identity and we do not know where he is located. So basically, if there's no past persecution and therefore a presumption of future persecution, the petitioner loses from the government's perspective. Yes, Your Honor. He has to establish a reasonable possibility of future persecution. And the evidence here simply does not establish that. The record evidence does not compel the contrary conclusion. Okay. Do either of my colleagues have additional questions? All right. Thanks to the government. I believe the petitioner's counsel has a little extra time. Go ahead, counsel. Thank you, Your Honors. First of all, I want to point to the standard for future persecution. It's merely a 1 in 10 chance. That being said, the... Where does that come from? Delay? I believe... Canalis Vargas, maybe. Your Honor, I cannot think of it off the top of my head, but I certainly should know. Canalis Vargas, maybe, counsel? Canalis Vargas. Yes, I believe you're right. It's merely a 1 in 10 chance, which is a very low threshold for perpetution by me. And additionally, this length of time... Let me ask you about this real quick, because this case is a little odd to me in the sense that, yes, there's a political aspect to it, because it starts at a vote count. We've had vote count problems in America ourselves. But it smells of a personal beef, that is, and there's nothing that says, we are the FMLN and we're going to get you right-wingers or vice versa. So that makes the future probability pretty low in the sense that it's not like you're returning to that might be potentially somewhere. How would you react to that? Respectfully, Your Honor, the beef he has with Petitioner is based on his political opinion. And provided that the government is unable or unwilling to protect Petitioner, it doesn't matter whether he's entering a hostile political environment or not. But he did go to the police and they took a report, quite a detailed report, as I see from the record, isn't it? They took a report. But country conditions in El Salvador, you'll see that police corruption is very rampant. And whether they take a report is not as good of a litmus test as whether an arrest is made. And we don't see that in this case. Other questions by either of my colleagues? All right. We thank both parties for their argument. The case just argued is submitted.
judges: Boggs, SMITH, OWENS